**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

**TAMYA S., on behalf of L.S.,**
**a minor,**

        **Plaintiff,**

                                **Case No. 1:20-cv-10035**
    **v.**                             **Magistrate Judge Norah McCann King**

**KILOLO KIJAKAZI,**
**Acting Commissioner of Social Security,**

        **Defendant.**

**<u>OPINION AND ORDER</u>**

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Tamya S. (hereinafter "Plaintiff") on behalf of L.S., her minor son (hereinafter "Claimant"), for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying Plaintiff's application.[1] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court reverses the Commissioner's decision and remands the action for further proceedings.

**I.    PROCEDURAL HISTORY**

The application for benefits, filed on June 12, 2017, alleges that Claimant has been disabled since August 1, 2015. R. 105, 117, 201–09. The application was denied initially and

---

[1] Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as Defendant in her official capacity. *See* Fed. R. Civ. P 25(d).

1

upon reconsideration. R. 118−21, 131−34. Plaintiff sought a *de novo* hearing before an administrative law judge. R. 136−38. Administrative Law Judge ("ALJ") Helen Valkavich held a hearing on August 23, 2019, at which Plaintiff and Claimant, who were represented by counsel, testified. R. 49−95. In a decision dated September 16, 2019, the ALJ concluded that Claimant was not disabled within the meaning of the Social Security Act from June 12, 2017, the date on which the application was filed, through the date of that decision. R. 28−44. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on June 8, 2020. R. 16−21. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On January 12, 2021, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 10.[2] On that same day, the case was reassigned to the undersigned. ECF No. 11. The matter is now ripe for disposition.

## II.   LEGAL STANDARD

### A.   Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind

---

[2]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565

(1988) (citation and internal quotations omitted); *see K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*,

No. 17-2309 , 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).  Substantial evidence is "less

than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc.*

*Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *see K.K.*, 2018

WL 1509091, at *4.

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot

be set aside merely because the Court "acting de novo might have reached a different

conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g., Fargnoli*

*v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported

by substantial evidence, we are bound by those findings, even if we would have decided the

factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*,

2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or

substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d

1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic

or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)

("The search for substantial evidence is thus a qualitative exercise without which our review of

social security disability cases ceases to be merely deferential and becomes instead a sham.");

*see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9,

2016).  The Court has a duty to "review the evidence in its totality" and "take into account

whatever in the record fairly detracts from its weight."  *K.K.*, 2018 WL 1509091, at *4 (quoting

*Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted));

*see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4.  The ALJ decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter*, 650 F.2d at 482.  Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is

4

supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518.

### B.   Sequential Evaluation Process

The Social Security Act establishes a three-step sequential evaluation for determining whether a child is disabled within the meaning of the statute. 20 C.F.R. § 416.924(a)–(d). The claimant has the burden of proving disability. 20 C.F.R. § 416.912(a)(1).

At step one, the ALJ determines whether the claimant is currently working and if the work performed constitutes substantial gainful activity. 20 C.F.R. § 416.924(b). If so, then the inquiry ends because the claimant is not disabled.

At step two, the ALJ decides whether the claimant has a severe medically determinable impairment. 20 C.F.R. § 416.924(c). If the claimant does not have such an impairment, or if the claimant's impairment is only a slight abnormality or combination of slight abnormalities that causes no more than minimal functional limitations, the inquiry ends because the claimant is not disabled. *Id*. Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the claimant's impairment or combination of impairments "meet[s]," "medically equal[s]," or "functionally equal[s]" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 416.924(d). If the claimant has such an impairment or combination of impairments, and if the claimant's condition also meets the duration requirement, then the claimant will be found to be disabled within the meaning of the statute. 20 C.F.R. § 416.924(d)(1).

An impairment or combination of impairments medically equals a listing "if it is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 416.1526(a). When determining whether an impairment medically equals a listing, the ALJ considers all the evidence in a claimant's record about the claimant's impairment and its effects on the claimant that are relevant to a finding of medical equivalence. 20 C.F.R. § 416.926(c).

If "the [claimant's] impairment does not medically meet a listing . . . the examiner must determine whether the impairment functionally equals a listing." *Jaramillo v. Comm'r of Soc. Sec.*, 130 F. App'x 557, 560 (3d Cir. 2005). A court determines whether a claimant's impairment "functionally equals" a Listing by evaluating the following six domains of functioning: "(i) Acquiring and using information; (ii) Attending and completing tasks; (iii) Interacting and relating with others; (iv) Moving about and manipulating objects; (v) Caring for yourself; and,

6

(vi) Health and physical well-being." 20 C.F.R. § 416.926a(b)(1). To functionally equal a Listing, the claimant's impairment(s) must result in "marked" limitations in two domains of functioning or in an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a). A "marked" limitation in a domain occurs when the claimant's impairment interferes seriously with the claimant's ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(2)(i). A "marked" limitation also means a limitation that is "more than moderate" but "less than extreme." *Id*. A "marked" limitation is the equivalent of the functioning expected to be found on standardized testing with scores that are at least two, but less than three, standard deviations below the mean. *Id*. An "extreme" limitation in a domain occurs when the claimant's impairment interferes very seriously with the claimant's ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(3)(i). An "extreme" limitation also means a limitation that is "more than marked" and is the rating given to the worst limitations. *Id*. However, "extreme limitation" does not necessarily mean a total lack or loss of ability to function. *Id*. It is the equivalent of the functioning expected to be found on standardized testing with scores that are at least three standard deviations below the mean. *Id*.

Finally, an ALJ must use a "whole child" approach when determining whether a claimant's impairment is functionally equivalent to a Listing. SSR 09-1p. Under this approach, the ALJ starts the evaluation "by considering the child's functioning without considering the domains or individual impairments." *Id*. After identifying "which of a child's activities are limited," the ALJ then determines "which domains are involved in those activities" and "whether the child's impairment(s) could affect those domains and account for the limitations." *Id*. An impairment "may have effects in more than one domain" and the ALJ must evaluate limitations caused by an impairment "in any affected domain(s)." *Id*. (quoting 20 C.F.R. § 416.926a(c)).

7

Finally, an ALJ must "rate the severity of the limitations in each affected domain." *Id.* "This technique for determining functional equivalence accounts for all of the effects of a child's impairments singly and in combination—the interactive and cumulative effects of the impairments—because it starts with a consideration of actual functioning in all settings." *Id.*

## III.    ALJ DECISION AND APPELLATE ISSUES

Claimant was born on November 6, 2009. R. 31. Claimant was therefore seven (7) years old on June 12, 2017, the date on which the application was filed, and was a school-age child on September 16, 2019, the date on which the ALJ issued her decision. *Id.* At step one, the ALJ found that Claimant had not engaged in substantial gainful activity since June 12, 2017, the application date. *Id.*

At step two, the ALJ found that Claimant suffered from the following severe impairments: asthma, allergies, attention deficit hyperactivity disorder ("ADHD"), and an unspecified learning disorder. *Id.* The ALJ also found that Claimant's history of a G6PD blood disorder was not severe. *Id.*

At step three, the ALJ found that Claimant did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 32–33. The ALJ also found that Claimant does not have an impairment or combination of impairments that functionally equaled the severity of any Listing. R. 33–44. Specifically, the ALJ found that the Claimant had less than marked limitations in acquiring and using information, attending and completing tasks, interacting and relating with others, caring for himself, and in health and physical well-being, and no limitation in moving about and manipulating objects. *Id.*

Based on the foregoing analysis, the ALJ concluded that Claimant has not been disabled within the meaning of the Social Security Act since June 12, 2017, the date on which the

application was filed. R. 44.

Plaintiff disagrees with the ALJ's findings at step three and asks that the decision of the Acting Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Memorandum of Law,* ECF No. 15; *Plaintiff's Reply Brief*, ECF No. 17. The Acting Commissioner takes the position that her decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1,* ECF No. 16.

## IV.   RELEVANT RECORD EVIDENCE

On August 1, 2019, Andrea Thorp, D.O., Claimant's treating pediatrician, completed a seven-page check-the-box and fill-in-the-blank form entitled "SSI CHILDHOOD DISABILITY FUNCTIONAL QUESTIONNAIRE Ages: 6 and Older." R. 1020−26, 1081−87 (duplicate).[3] Dr. Thorp noted that she has been Claimant's pediatrician since December 9, 2009. R. 1020 (noting further that Claimant's birth date is November 6, 2009). Dr. Thorp assessed Claimant's functioning in the six functional domains,[4] using a rating scale that includes scores of "Never,"

---

[3] For ease of reference, the Court will refer to only R. 1020−26.
[4] The Court will focus on the three domains discussed by the parties: acquiring and using information, attending and completing tasks, and interacting and relating with others.

Some difficulty,"[5] "Marked,"[6] and "Extreme."[7] R. 1020–26. In the domain of acquiring and

using information, Dr. Thorp stated that Claimant never had difficulty recognizing colors,

shapes, etc., and had some difficulty in using appropriate vocabulary, counting or spelling, and

in using imagination in play and creative activities. R. 1021. She also commented that Claimant

had marked or serious difficulties learning new material, recalling previously learned material,

demonstrating short-term recall, understanding verbal instructions, following verbal

instructions, demonstrating problem solving skills, remembering instructions, comprehending

written instructions, and recognizing and using concepts, and an extreme or very serious

difficulty in learning in comparison to same-age unimpaired children. *Id*. In support of these

findings, Dr. Thorp explained that Claimant "has processing deficit across multiple modalities

and is functioning at a second grade level and he will be starting 4th grade." *Id*. In the domain of

attending and completing tasks, Dr. Thorp found that Claimant had some difficulty waiting to

take turns, controlling the impulse to blurt out answers, keeping track of possessions, and

performing tasks without bothering others, and marked or serious difficulty in being easily

distracted, following through on instructions, concentrating without adult supervision, carrying

out simple instructions, dealing with frustration / giving up easily, keeping pace with other

---

[5] "Some difficulty" "means that in comparison to same-aged unimpaired children, this child functions like the average child in this area, with occasional difficulties in some of the activities." R. 1020.

[6] A "marked" difficulty "means that in comparison to same-aged unimpaired children, this child's functioning is <u>seriously affected</u> in one or more of the activities listed. Marked equates to functioning in a particular area that would be expected from a measurement at least 2 standard deviations below the mean in that area (e.g., on standardized tests like DABS, KABC, McCarthy's, Peabody's, Stanford-Binet, Vineland's, Woodcock-Johnson, WISC)." *Id*. (emphasis in original)

[7] "Extreme means that in comparison to same-aged unimpaired children, this child's functioning is <u>seriously affected</u>. Extreme equates to a rating of difficulties that would be expected from a measurement similar to 3 standard deviations or more below the mean in that area." *Id*. (emphasis in original).

children, completing tasks on time, paying attention / daydreaming instead of attending to activities, staying on tasks without being reminded, staying on tasks without supervision, and staying on tasks that require extra encouragement. R. 1023. In support of these findings, Dr. Thorp wrote that "[d]ue to his processing deficits he is limited in the above skills / tasks." *Id.* In the domain of interacting and relating to others, although Dr. Thorp found that Claimant never had difficulty getting along with authority figures, respecting authority / being disobedient, interacting appropriately with adults, talking constantly, unable to stop talking, and being understood by others on first effort, she also found that Claimant had some difficulty in sharing / taking turns, initiating interactions (too shy or timid), and being disruptive, and talking out of turn, and marked or serious difficulty getting along with other children, unprovoked hostility or anger, aggression (*i.e.*, scratches, punches, hits, bullies, mocks others), and showing initiative in conversation. R. 1022. In support of these findings, Dr. Thorp wrote that "[d]ue to his processing deficits he has difficulty interacting with his peers. He also has some anger and frustration issues and he will be physical with his brother and can be verbally aggressive with his peers." *Id.*

## V.    DISCUSSION

Plaintiff argues, *inter alia*, that the ALJ erred when evaluating Dr. Thorp's opinions. *Plaintiff's Memorandum of Law*, ECF No. 15, pp. 10−14; *Plaintiff's Reply Brief*, ECF No. 17, pp. 1−8. This Court agrees.

In making a disability determination, an ALJ must evaluate all record evidence. *Plummer,* 186 F.3d at 433; *Cotter,* 642 F.2d at 704. The ALJ's decision must include "a clear and satisfactory explication of the basis on which it rests" sufficient to enable a reviewing court "to perform its statutory function of judicial review." *Cotter*, 642 F.2d at 704–05. Specifically,

11

the ALJ must discuss the evidence that supports the decision, the evidence that the ALJ rejected, and explain why the ALJ accepted some evidence but rejected other evidence.  *Id*. at 705–06; *Diaz v. Comm'r of Soc. Sec*., 577 F.3d 500, 505–06 (3d Cir. 2009); *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001) ("Although we do not expect the ALJ to make reference to every relevant treatment note in a case . . . we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law."). Without such an explanation, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705; *see also Burnett,* 220 F.3d at 121 (citing *Cotter*, 642 F.2d at 705).

For claims filed after March 27, 2017,[8] the regulations eliminated the hierarchy of medical source opinions that gave preference to treating sources. *Compare* 20 C.F.R. § 416.927 *with* 20 C.F.R. § 404.920c(a) (providing, *inter alia*, that the Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources"). Instead, the Commissioner will consider the following factors when considering all medical opinions: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treating examination, the frequency of examinations, and the purpose of the treatment relationship; (4) the medical source's specialization; and (5) other factors, including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. § 416.920c(c).

---

[8] As previously noted, Plaintiff's claim was filed on June 12, 2017.

The regulations emphasize that "the most important factors [that the ALJ and Commissioner] consider when [] evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)." *Id*. at 416.920c(a). As to the supportability factor, the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id*. § 416.920c(c)(1). As to the consistency factor, the regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id*. § 416.920c(c)(2).

The applicable regulations further require the ALJ to articulate her "consideration of medical opinions and prior administrative medical findings" and articulate in the "determination or decision how persuasive [she] find[s] all of the medical opinions and all of the prior administrative medical findings in [the claimant's] case record." *Id*. at 416.920c(b). "Specifically, the ALJ must explain how [she] considered the 'supportability' and 'consistency' factors for a medical source's opinion. . . . The ALJ may—but is not required to—explain how [she] considered the remaining factors." *Michelle K. v. Comm'r of Soc. Sec*., No. 1:19-CV-01567, 2021 WL 1044262, at *4 (W.D.N.Y. Mar. 19, 2021) (citing 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2)).

Here, at step three of the sequential evaluation process--when determining that Claimant did not have an impairment or combination of impairments that functionally equaled a listed

impairment--the ALJ found that Dr. Thorp's opinion was "not persuasive[,]" reasoning as

follows:

> The claimant's pediatrician, Andrea Thorp, DO, submitted a statement noting the
> claimant has mostly marked to serious limits in acquiring and using information
> and attending and completing tasks. Dr. Thorp indicated the claimant was
> functioning at the 2nd grade level and would be in the 4th grade. In interacting and
> relating to others, Dr. Thorp opined the claimant had marked or serious problems
> getting along with other children due to aggressive behavior or anger and had
> marked limits in initiating a conversation. However, she noted the claimant only
> had some difficulty with sharing, taking turns, initiating interactions, and talking
> out of turn. Moreover, she noted the claimant had no issues with authority figures
> or adults or being understood when talking. Regarding the claimant's ability to care
> for himself, Dr. Thorp stated the claimant had difficulty regulating his emotions
> and becomes easily frustrated causing marked or serious problems dealing with
> frustration, demonstrating appropriate emotion, and regulating his behavior.
> Nevertheless, she found the claimant was likely average in moving about and
> manipulating objects and had only no to some difficulty in health and physical well-
> being citing his mild intermittent asthma, G6PD deficiency, and stuttering (17F/56-
> 61). The undersigned finds this opinion is not persuasive. Dr. Thorp's opinion is
> not supported by her treatment notes that document primarily care for the
> claimant's asthma and allergy symptoms, not his ADHD, learning disorder, or
> behavioral issues (11F/4, 8). Her opinion is not consistent with recent testing and
> IEP notes that describe the claimant as cooperative and exhibiting social and
> personal development skills at grade level (17F/5-6). Furthermore, while the
> claimant participates in special education, the claimant's mother even admitted in
> her testimony the claimant has never been held back a grade in school, justifying a
> finding of only less than marked limitations in acquiring and using information and
> attending and completing tasks.

R. 36.

Plaintiff first challenges the ALJ's finding that "Dr. Thorp's opinion is not supported by

her treatment notes that document primarily care for the claimant's asthma and allergy

symptoms, not his ADHD, learning disorder, or behavioral issues (11F/4, 8 [R. 581, 585])." R.

36. Plaintiff contends that the ALJ failed to identify which of Dr. Thorp's treatment notes upon

which the ALJ relied, and Plaintiff points out, with citation to the record, that Dr. Thorp's notes

in fact support the physician's opinion in this regard. *Plaintiff's Memorandum of Law*, ECF No.

15, pp. 11–12 (citing R. 831, 833, 841, 844–49, 858, 927, 941, 988, 1005, 1019–26); *Plaintiff's*

14

*Reply Brief*, ECF No. 17, pp. 2–3 (same). Plaintiff's arguments are well taken. As a preliminary matter, the ALJ's cited pages include only an Emergency Department Physician Note, R. 581, and an excerpt from an Emergency Department Discharge Summary, R. 585, both dated May 21, 2019, and both authored by someone other than Dr. Thorp. Although it is not immediately apparent why the ALJ relied on these pages, it may be that the ALJ cited to these two pages because they reflect a recommendation that the Claimant follow up with Dr. Thorp in connection with Claimant's asthma and allergies. R. 581, 585. These two pages, which were not authored by Dr. Thorp and which both were generated on a single day in 2019, simply do not support the ALJ's finding that Dr. Thorp's own "treatment notes [] document primarily care for the claimant's asthma and allergy symptoms, not his ADHD, learning disorder, or behavioral issues." R. 36. As Plaintiff points out, Dr. Thorp's own treatment notes address conditions other than Claimant's asthma and allergy symptoms and in fact support her opinion. *Plaintiff's Memorandum of Law*, ECF No. 15, pp. 11–12 (citations omitted); *Plaintiff's Reply Brief*, ECF No. 17, pp. 2–3 (citations omitted). For example, Dr. Thorp identified a learning disorder and referred Claimant for an auditory processing evaluation. R. 841, 844. That audiological / auditory processing evaluation, which was completed on June 21, 2018, R. 844–49, revealed, *inter alia*, that Claimant "has a communication processing deficit across multiple modalities" and included a referral for additional evaluation. R. 844.[9] Dr. Thorp's notes also include a

---

[9] To the extent that the Acting Commissioner suggests that the ALJ rightfully found that Dr. Thorp's notes did not support her opinion because Dr. Thorp was "a primary care provider" and referred Claimant to another provider for a neurodevelopmental exam "rather than the doctor [Dr. Thorp] engaging in this level of treatment for" Claimant, *Defendant's Brief Pursuant to Local Rule 9.1*, ECF No. 16, p. 11, this argument is not persuasive. As previously noted, supportability and consistency, not specialization, are the two most important factors to consider when evaluating a medical opinion. 20 C.F.R. § 416.920c(a), (b)(2). Regardless of her status as a pediatrician, Dr. Thorp's treating notes support her opinion as discussed above. *Cf. Gogel v. Comm'r of Soc. Sec.*, No. 2:20-CV-366-MRM, 2021 WL 4261218, at *9 (M.D. Fla. Sept. 20,

diagnosis of ADHD, predominantly inattentive type, R. 858, and discuss an acknowledged speech delay in connection with which Plaintiff is followed by an Individualized Education Program ("IEP") at school. R. 927, 941, 988. Dr. Thorp's notes further document Claimant's parents' concerns regarding the side effects of medication (Adderall) prescribed to Claimant since October 2017, including an increase in Claimant's anger. R. 1005. Dr. Thorp's notes reflect reports of Claimant's anger, desire to hurt his brother when his brother bothers Claimant, and that Claimant will "go off" on his friends and not many want to interact with him. *Id.* Dr. Thorp's notes also reflect Plaintiff's concern regarding Claimant's behavior—which included immature behavior such as twirling things and getting upset if he cannot find things—and inquiry about counseling services. R. 831, 833, 1019. In short, Dr. Thorp's own treatment records reflect that she was aware of, and addressed, Claimant's ADHD, learning disorder, and behavioral issues. In light of the ALJ's failure to acknowledge Dr. Thorp's treatment notes in this regard, this Court cannot conclude that substantial evidence supports the ALJ's evaluation of the supportability of Dr. Thorp's opinions. *See* 20 C.F.R. § 416.920c(c)(1); *Velasquez v. Kijakazi*, No. 19CV9303, 2021 WL 4392986, at *25–26 (S.D.N.Y. Sept. 24, 2021) ("By turning a blind eye to this large segment of the medical evidence, the ALJ was not in a position, under the [new] regulations [20 C.F.R. §§ 404.1520c, 416.920c], to analyze fully the supportability and consistency of the medical opinion of Dr. Grullon–Plaintiff's long-standing mental-health treater."); *id.* at *27 ("As of this date, multiple district courts that have reviewed ALJ decisions under the new SSA regulations [20 C.F.R. §§ 404.1520c, 416.920c] have remanded cases where

2021) (stating, *inter alia*, that "Plaintiff cites no legal authority to support his contention that the ALJ cannot consider the consistency of an opinion by a mental health specialist with the objective psychiatric findings of a non-mental health specialist" and that "while specialty is one factor that the ALJ may consider in assessing the persuasiveness of an opinion, supportability and consistency are more important").

the evidence supporting or consistent with a rejected medical opinion was ignored or mischaracterized.") (citations omitted); *Prieto v. Comm'r of Soc. Sec.*, No. 20-CV-3941, 2021 WL 3475625, at *14–15 (S.D.N.Y. Aug. 6, 2021) ("An ALJ may not ''cherry-pick' medical opinions that support his or her conclusions while ignoring opinions that do not.' . . . Such cherry-picking, without proper analysis of the supportability and consistency factors, is ground for remand.") (citations omitted); *Buethe v. Comm'r of Soc. Sec.*, No. 2:20-CV-552-KJN, 2021 WL 1966202, at *7 (E.D. Cal. May 17, 2021) ("[T]he text of the regulations explicitly require an explanation of how the ALJ considered the supportability and consistency of an opinion. 20 C.F.R. § 404.1520c(b)(2). Synthesizing this requirement with prior circuit law prohibiting cherry-picking, the ALJ must explicitly address evidence that supports and is consistent with a less-than-persuasive medical opinion or PAMF [prior administrative medical findings], and should this evidence fail to persuade, the ALJ must provide legally-sufficient reasons why.").

Plaintiff next challenges the ALJ's finding that Dr. Thorp's "opinion is not consistent with recent testing and IEP notes that describe the claimant as cooperative and exhibiting social and personal development skills at grade level (17F/5-6 [R. 1031–32])." R. 36. Plaintiff characterizes this observation as "the only normal finding" in the report cited by the ALJ, and argues that this observation was not a test finding but instead originated in Claimant's second grade report card, and contends that the rest of that cited report, including a summary of Claimant's IEP, reflects Claimant's deficits in functioning. *Plaintiff's Memorandum of Law*, ECF No. 15, pp. 12–13 (citing R. 1028–31, 1033); *Plaintiff's Reply Brief*, ECF No. 17, pp. 2–4 (same). Plaintiff argues that the ALJ improperly selected a single note out of a seven-page report that, overall, supports Dr. Thorp's opinions. *Id.* Plaintiff's argument is well taken. As a preliminary matter, it is not clear to what "recent testing" the ALJ intends to refer, R. 36,

particularly where the ALJ, earlier in her opinion, acknowledged that Claimant was "behind other nine-year old children according to testing (2F/15)[.]" R. 35. To the extent that the ALJ relied on the report cited at Exhibit 11F/4, 8, R. 36, as the "recent testing," the Court notes that this referenced report is a seven-page initial pediatric neurodevelopmental evaluation performed by Lawrence B. Laveman, M.D., on August 9, 2019. R. 1028−34. Although Dr. Laveman noted that Claimant's second grade report card reflects that he "was on grade level for science and social studies, as well as personal and social skills, including work habits and classroom behaviors[,]" he also noted that, in the third grade, Claimant "was moved to a self-contained 6:1:3 ratio classroom for reading, written language and math, with continued in-class resource replacement for science and social studies and related services for speech/language therapy." R. 1031. Dr. Laveman further noted additional evidence reflecting Claimant's deficits, including social, behavioral, and speech difficulties, performing below grade level, as well as an IEP requiring, *inter alia*, a structured setting of a self-contained classroom for the 2019-2020 academic year:

> The IEP of 4/15/2019 indicates, in the assessment of his present level of academic achievement and functional performance (PLAAFP), in speech/language therapy, he was noted to have a "need to rush through his learning", tends to interrupt peers when conversing in the classroom, leading to an increase in dysphonic speech involving sound prolongations, word/phrase repetition, silent pauses or blocks when initiating sentences, and responding to or asking questions. The teacher notes he is aware of his involuntary motor movements, including eye tics and head tilts. He is noted to sit with his hands on his face, leaning back in his chair, or leaning on his hands complaining of "feeling tired", and showing frustration in not being able to express his wants at a given moment, associated with increased dysfluency. The speech pathologist noted he had not yet met the goal of achieving fluent speech at a conversational level. In reading, the teacher notes him to be at reading level E as of 3/2019, corresponding to an early to mid-1st grade level.
>
> The teacher noted him struggling to maintain focus with resting his head on his hand or his desk, is reliant on manipulatives to solve math problems, is struggling with language skills involving past and present tense verbs, stumbling upon his thoughts and requiring additional time to share ideas. In math, he is struggling with

18

organizing or lining up numbers correctly if they are not already lined up for him and needs reminders that larger numbers are the whole numbers in completing subtraction problems. He is able to read word problems, but requires teacher support when completing each step of a word problem. In social, emotional and behavioral assessment, he is noted to express frustration with leveled grouping, is easily distracted and needs much reinforcement to stay on task in spite of working diligently.

Recommendation in the IEP for the 2019-2020 academic year is for self-contained placement for all core academic subjects with group speech/language therapy twice per week/30 minutes. Extended year services were offered from 6/27 through 8/1/2019 four days per week, 4 hours per day with related services for group speech/language therapy once per week/30 minutes.

R. 1031. Dr. Laveman also reported that "[o]n neurologic examination, mental status: [Claimant] entered the examining room with his parents. He was listless, somnolent, and slept through the majority of the appointment, snoring, with his neck extended, and mouth open. He was poorly roused throughout the assessment." R. 1033. In her decision, the ALJ acknowledged none of this evidence that reflects functional deficits consistent with Dr. Thorp's opinions; instead, the ALJ relied on a single reference in Dr. Laveman's neurodevelopmental evaluation when concluding that Dr. Thorp's opinions were inconsistent with the other evidence in the record. R. 36. Based on this record, the Court cannot conclude that substantial evidence supports the ALJ's evaluation of the consistency of Dr. Thorp's opinions with other evidence in the record. *See* 20 C.F.R. § 416.920c(c)(2); *Velasquez*, 2021 WL 4392986, at *25–27; *Prieto*, 2021 WL 3475625, at *14–15; *Buethe*, 2021 WL 1966202, at *7; *cf. A.B. o/b/o Y.F. v. Colvin*, 166 F. Supp. 3d 512, 520–21 (D.N.J. 2016) (remanding where ALJ failed to consider minor claimant's need for a structured school setting and how minor claimant would function without the special education services and individualized attention he receives); *Archer ex rel. J.J.P. v. Astrue*, 910 F. Supp. 2d 411, 427–28 (N.D.N.Y. 2012) ("Here, the majority of the evidence in the record indicates that J.J.P.'s functioning is largely dependent upon a self-contained classroom setting. This district has in the

past regarded enduring behavioral issues despite a claimant's placement in successively restrictive environments as proof of the claimant's marked limitation in functioning.").

Moreover, it is unclear to what extent the ALJ's error in evaluating Dr. Thorp's opinions infects the ALJ's evaluation of whether Claimant suffers an impairment or combination of impairments that functionally equals a listed impairment, particularly in her consideration of Claimant's limitation in the domain of acquiring and using information. R. 36–44.[10] For

---

[10] The domain of acquiring and using information assesses how well a child acquires or learns information and how well the child uses the information that the child has learned. 20 C.F.R. § 416.926a(g). As noted by the ALJ,

> Social Security rules provide that a preschooler (i.e., a child age 3 to attainment of age 6) without an impairment should begin to learn and use the skills that will help him to read and write and do arithmetic when he is older. For example, listening to stories, rhyming words, and matching letters are skills needed for learning to read. Counting, sorting shapes, and building with blocks are skills needed to learn math. Painting, coloring, copying shapes, and using scissors are some of the skills needed in learning to write. Using words to ask questions, give answers, follow directions, describe things, explain what he means, and tell stories allow the child to acquire and share knowledge and experience of the world around him. The child should be able to understand the order of daily routines (e.g., breakfast before lunch), understand and remember his own accomplishments, and begin to understand increasingly complex concepts such as time, as in yesterday, today, and tomorrow. All of these are called "readiness skills," and the child should have them by the time he begins first grade (20 CFR 416.926a(g)(2)(iii) and SSR 09-3p).

> Social Security rules that a school-age child (i.e., a child age 6 to the attainment of age 12) without an impairment should be able to learn to read, write, and do math, and discuss history and science. The child will need to use these skills in academic situations to demonstrate what he has learned by reading about various subjects and producing oral and written projects, solving mathematical problems, taking achievement tests, doing group work, and entering into class discussions. The child will also need to use these skills in daily living situations at home and in the community (e.g., reading street signs, telling time, and making change). The child should be able to use increasingly complex language (vocabulary and grammar) to share information and ideas with individuals or groups, by asking questions and expressing his own ideas, and by understanding and responding to the opinions of others (20 CFR 416.926a(g)(2)(iv) and SSR 09-3p).

R. 37.

example, as previously noted, in order to qualify for benefits on the basis of impairments that functionally equal a Listing, Plaintiff must establish that Claimant had two "marked" limitations or one "extreme" limitation in any of the six functional domains. 20 C.F.R. § 416.926a(d). The ALJ cited to Dr. Thorp's opinion to support a finding that Claimant had a less than marked limitation in acquiring and using information, R. 38 (citing Exh. 17F/57, R. 1083 (duplicate at R. 1022), even though the ALJ discounted that same opinion as unsupported and inconsistent with other evidence, R. 36. Moreover, the ALJ relied on Dr. Thorp's finding in the domain of interacting and relating with others when finding that Claimant had a less than marked limitation in the domain of acquiring and using information, that is to say, the ALJ relied on Dr. Thorp's opinion of no limitation in one particular area in evaluating Claimant's limitations in an entirely different domain of functioning. R. 38.

The ALJ implicitly criticized Dr. Thorp's opinions when she stated that, "while the claimant participates in special education, the claimant's mother even admitted in her testimony the claimant has never been held back a grade in school, justifying a finding of only less than marked limitations in acquiring and using information and attending and completing tasks."[11] R.

---

[11] The domain of attending and completing tasks assesses how well a child is able to focus and maintain attention and also assesses how well the child begins, carries through, and finishes activities, including the pace at which the child performs activities and the ease with which the child changes them. 20 C.F.R. § 416.926a(h). As noted by the ALJ,

> Social Security rules provide that a preschooler without an impairment should be able to pay attention when he is spoken to directly, sustain attention to his play and learning activities, and concentrate on activities like putting puzzles together or completing art projects. The child should also be able to focus long enough to do many more things independently, such as gathering clothes and dressing, feeding, or putting away toys. The child should usually be able to wait his turn and to change his activity when a caregiver or teacher says it is time to do something else. The child should be able to play contentedly and independently without constant supervision (20 CFR 416.926a(h)(2)(iii) and SSR 09-4p).

21

36. However, that criticism cannot cure or obviate the deficiencies in the ALJ's reasoning previously discussed. As a preliminary matter, supportability and consistency are the two most important factors that must be considered by an ALJ when evaluating a medical opinion, *see* 20 C.F.R. § 416.920c(a), (b)(2), and the ALJ's consideration of these factors in this case was, for the reasons noted above, flawed. Moreover, the Acting Commissioner cites to no authority that requires that a claimant be held back a grade in order to support a marked limitation in either of these domains. *See generally Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 16. In any event, the ALJ ignored those portions of the neurodevelopmental evaluation that indicated that Claimant was performing below grade level, nor did she ever discuss Claimant's need for a structured school setting or the Claimant's ability to function without the special education services and individualized attention that he receives. R. 36; *see also Weaver o/b/o R.L.F. v. Saul*, No. CV 18-1550, 2019 WL 5456792, at *3–4 (W.D. Pa. Oct. 24, 2019) ("Yet the law requires the ALJ to consider how the claimant would function outside of this structured setting. There is no analysis of how the claimant would function without the structured setting he receives at school–particularly with respect to the domains of acquiring and using information

---

Social Security rules provide that a school-age child without an impairment should be able to focus his attention in a variety of situations in order to follow directions, remember and organize school materials, and complete classroom and homework assignments. The child should be able to concentrate on details and not make careless mistakes in his work (beyond what would be expected in other children of the same age who do not have impairments). The child should be able to change activities or routines without distraction, and stay on task and in place when appropriate. The child should be able to sustain attention well enough to participate in group sports, read by himself, and complete family chores. The child should also be able to complete a transition task (e.g., be ready for the school bus, change clothes after gym, change classrooms) without extra reminders and accommodation (20 CFR 416.926a(h)(2)(iv) and SSR 09-4p).

R. 38−39.

and attending and completing tasks. The ALJ's failure to do so requires remand of this action.");
*A.B. o/b/o Y.F.*, 166 F. Supp. 3d at 520–21; *Archer ex rel. J.J.P.*, 910 F. Supp. 2d at 427–28.

In short, for all these reasons, the Court cannot conclude that substantial evidence
supports the ALJ's evaluation of the opinion of Andrea Thorp, D.O. The Court therefore
concludes that the matter must be remanded for further consideration of Dr. Thorp's opinions
and further consideration of whether Claimant's impairments or combination of impairments
functionally equals a Listing for purposes of child's benefits.[12]

## VI.      CONCLUSION

For these reasons, the Court **REVERSES** the Commissioner's decision and **REMANDS**
the matter for further proceedings consistent with this *Opinion and Order*.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42
U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  December 3, 2021                            *s/Norah McCann King*
                                        NORAH McCANN KING
                                        UNITED STATES MAGISTRATE JUDGE

---

[12] Plaintiff asserts a number of other errors in the Commissioner's final decision. Because the
Court concludes that the matter must be remanded for further consideration of Dr. Thorp's
opinion and whether the Claimant functionally equals a Listing, the Court does not consider
those assertions.